## JULIUS AUGUSTUS JACKSON'S LESSEE v. NEHEMIAH HASTY, Defendant, and JOHN CANNON, Tenant.

Court of Common Pleas. Sussex. April 30, 1798.

*Wilson's Red Book, 208.**

---

* For later proceedings in this case see below, *Wilson's Red Book, 320.*

*Peery* and *Vining* for plaintiff. *Ridgely* and *Wilson* for defendants.

Defendants' counsel demurred to the evidence, *quod vide* for the evidence.

Plaintiff offered Elijah Cannon as a witness, who being sworn, on the *voir dire* said his wife was one of the heirs to these lands, she is still living, that plaintiff had accepted them as intestate and paid him his share.

Defendants' counsel objected to his competency. He is evidently interested, because in case of failure by plaintiff in recovering, he may immediately recover of witness the money paid to him, the consideration having failed.

Plaintiff's counsel yielded to the force of the objection and called another witness; but afterwards wishing to prove the family, they again called Elijah Cannon, and defendants' counsel readily acknowledged his competency to prove pedigree. He was then sworn in chief.

Plaintiff's counsel offered a deed, dated April, 1792, and it was objected to, although in part read to the jury, because dated since the demise, and rejected without argument.

The demurrer is in the words following, *viz:*

In the Court of Common Pleas, Sussex County, April Term, 1798, before the Honorable RICHARD BASSETT and KENSEY JOHNS, Esquires, Justices of the same court.

Thomas Fairclaim, Lessee of Julius Augustus Jackson,
*v.*
Nehemiah Hasty and John Cannon.

Trespass and ejectment. *Narratio.* Plea and issue, *prout* the same filed, and the docket entries plots, *prout* the same filed.

And now to wit this day, the said Thomas Fairclaim and Nehemiah Hasty and John Cannon by their attorneys appeared, and the jury likewise appeared and were sworn etc. Upon which *William Peery* and *John Vining,* Esquires, of counsel with the plaintiff, Thomas Fairclaim, in order to maintain the issue above joined, gave in evidence to the said jury before the said justices a patent from Charles, Absolute Lord etc., Baron of Baltimore, to John Hudson, dated the fifth day of November, MDCCXXXI, for a tract or parcel of land called Gibralter, containing and laid out for one hundred acres of land, more or less, *prout* the said patent.

Then Elijah Cannon was sworn as a witness on the part of the plaintiff, who on his oath said that he knew John

Hudson, that John Hudson had five children, to wit: Amy, who married Thomas Lockerman; Hester, who is dead; Sophia, who married Thomas Smith; Sally, who married John Cannon, the father of the defendant; and a son called Constantine Hudson. That the said John Cannon and Sally, his wife, had issue, three sons, to wit: John, the defendant, who was the eldest; Hudson, and Whittington; and four daughters: Susannah, who married Curtis Smith; Sophia, married to George Smith; Lucretia, married to James Cannon; and Ann, who married the said Elijah, the witness. That he, the said witness, had known the land of John Hudson fifty or sixty years. That John Hudson died there, and that his daughter Sally and three other daughters lived there before John Cannon, the father of defendant, married Sally; that the said John married the said Sally about forty years ago. That after the said John married the said Sally, he took her to his home plantation. That after he married her, he tilled the land a little while; then it was left vacant. Then John Cannon, the defendant, about ten, twelve or fifteen years ago got into possession of it.

Then the said counsel of the plaintiff, Thomas Fairclaim, gave in evidence to the jury aforesaid a bond, dated November 7, 1783, from Thomas Lockerman to Julius Augustus Jackson for £120, with a condition thereunder written for the conveyance of all his right, title, claim or demand to two certain tracts or parcels of land, the one called Gibralter, the other called the Straights of Gibralter, *prout* the said bond.

Also a copy of certain records and proceedings of the Orphans' Court held in and for the county of Sussex, the eighth day of December, 1785, adjudging certain lands therein mentioned to the aforesaid Julius Augustus Jackson, certified by Philips Kollocks, clerk, under his seal of office, which certificate is dated November 21, 1792, *prout* the said certificate, thereto annexed.

Also a receipt, dated March 31, 1790, to Julius Augustus Jackson for £10.4.0⅓, signed by Curtis Smith, Susannah Smith, George Smith and Sophia Smith, *prout* the said receipt.

Also a receipt dated April 23, to the said Julius Augustus Jackson for £5.4.6½, signed by James Cannon and Lucrecy Cannon.

Also a deed, dated March 31, 1790, signed by Whittington Cannon, James Cannon, Lucrecy Cannon, Curtis Smith, Susannah Smith, George Smith, Sophia Smith, Thomas

Smith, junior, Rodson Cannon, and Betsy Cannon to Julius Augustus Jackson for the said tracts of land, one called Gibralter and the other called the Straights of Gibralter, *prout* the said deed.

Then Joshua Obear was sworn as a witness on the part of the plaintiff; who on his oath said that he never saw any deed tendered by Julius Augustus Jackson to the defendant, John Cannon, to be executed by him; but that he, on the behalf of the said Julius Augustus Jackson, tendered £10.10. and some pence to John Cannon, the defendant, on account of said land, and that Cannon said if he could get no more than that he would have nothing. That this tender was not made more than four or five years ago.

Then Jeremiah Rust Jackson was sworn as a witness on the part of the plaintiff; who on his oath said that he was by when Mr. Obear made the tender of the money to the defendant, John Cannon, four, five or six years ago. That he could not ascertain the time, but that it was a little while after his father, the said Julius Augustus Jackson, was paying off the heirs. That he was present but once when Obear tendered money to Cannon. That Obear counted the money at said Cannon's, and the witness counted the money afterwards.

Then Samuel Handy was sworn as a witness on the part of the plaintiff; who on his oath said that he saw Obear tender the money to John Cannon; that he did not see the sum counted. That it was six years last January, which he remembered from the death of a neighbor of his; that he, the witness, knows the land called Gibralter; that Nehemiah Hasty, one of the defendants, lived on it in the year 1792. That Hasty lived there two or three years. That Jacob Moore now lives on the land under the defendant, John Cannon.

Then the aforesaid Jeremiah Rust Jackson, a witness on the part of the plaintiff, was again called and on his oath said that Nehemiah Hasty, one of the defendants, lived on said land in 1792 all that year. That he, Hasty, had lived there two or three years before 1792. That he thought Hasty moved off in 1793. That he, the witness, has known Gibralter about twenty-five years. That he does not remember who then lived on it, but that John Cannon, the father of the defendant, John Cannon, then possessed it, the same who married Sally, the daughter of old John Hudson. That the said John Cannon kept the possession until the

heirs had sold their rights, nine or ten years ago, until it was valued under an order of the Orphans' Court. That the said John Cannon, the father of the defendant, John Cannon, has been dead seven or eight years. That John Cannon, the defendant, has had possession of his part ever since his father's death. That the said Julius Augustus Jackson has had possession of the other shares.

Then William Stayton was sworn as a witness on the part of the plaintiff; who on his oath said he made the plots filed in this cause; that they are accurate. That Hasty lived on the lands in 1791 and in 1792.

And thereupon the said Thomas Fairclaim, by his counsel aforesaid, did require the said jurors to give their verdict of and concerning the matters within contained for the said Thomas Fairclaim. And the said Nehemiah Hasty and John Cannon by *James P. Wilson* and *Nicholas Ridgely,* their counsel, say that the aforesaid matters to the said jurors in form aforesaid shown in evidence by the said Thomas Fairclaim are not sufficient in law to maintain the issue above joined on the part of the said Thomas Fairclaim; and that they, the said Nehemiah Hasty and John Cannon, to the matters aforesaid in form aforesaid shown in evidence have not any necessity nor are obliged by the law of the land to answer, and this they are ready to verify; wherefore for want of sufficient matter in that behalf shown in evidence to the jury aforesaid, the said Nehemiah Hasty and John Cannon pray judgment, and that the jurors aforesaid may be discharged from giving any verdict on the said issue, and that the said Thomas Fairclaim from having a verdict on the premises may be barred etc.

> J. P. W.
> N. R. } Defendants' counsel.

---

And the said Thomas Fairclaim, for that he has shown in evidence to the jury aforesaid sufficient matters to maintain the issue within mentioned on the part of him, the said T. Fairclaim, and which he is ready to verify, and for as much as the said N. H. (and J. C., omitted by mistake) do not deny nor in any manner answer the said matters, prays judgment, and that the jurors aforesaid may be discharged from giving their verdict upon the said issue etc.

> W. P.
> J. V. } Plaintiff's counsel.

### [VERDICT.]

Upon which the jurors aforesaid upon their oaths aforesaid respectively do say that if it should happen that judgment in the plea aforesaid for the said Thomas Fairclaim upon the evidence aforesaid should be rendered, they find for the said Thomas Fairclaim, and that he has sustained damages by occasion of the premises to sixpence, and for his costs and charges to sixpence besides the costs expended; and if it should happen that judgment in the plea aforesaid for the said Nehemiah Hudson [1] and John Cannon upon the evidence aforesaid should be rendered, they find for the defendants etc.

NOTE 1. This demurrer differs from that in 3 Morg.Ess. 451 in making the offer of the evidence in the past tense, which is certainly more reasonable, forming a succession in the business, especially as it appears to be in term by the date in the introduction, in the presence of the parties, and in open court; and as the demurrer, joinder, and finding are in the present tense.

NOTE 2. It is said by the Court, Cro.Car. 243, to be more usual to discharge the jury, which is indeed in part the prayer of the demurrer and joinder. Also in 3 Morg.Ess. 449 it is said to be the most usual course to discharge the jury and have a writ of inquiry; but a conditional verdict (that is, contingent damages in form of a special verdict, 3 Morg.Ess. 549) is certainly equally good, being confirmed by all the books—it is more convenient and less expensive—and is not contrary to the prayer of the demurrer and joinder, for it yields to the court the decision of the point from which the parties prayed the jury might be discharged. *Vide* Doug. 222.

---

[1] Previously referred to as, "Nehemiah Hasty."